BUTLER & Co. *v.* NORTHUMBERLAND.       ·

The fact that a town agent for the sale of spirituous liquors is made liable to a penalty for purchasing liquors of any other person than a State liquor agent, after notice to him by the governor of the appointment of such State agent, does not make a sale of liquors to such town agent, by a person not a State agent, criminal, illegal, or void.

The penalty being levelled only against the town agent for his own remissness in duty, the law does not place the party selling to such town agent, though not being a State agent, *in pari delicto,* but he may recover pay of the town for the liquors so sold, if the sale was legal in other respects.

If the town agent was induced, by the false representations of the seller that he was a State agent, to purchase of him, the town, on discovery of the fraud, may rescind the contract, if done in reasonable time, by restoring or offering to restore what they have received under it; or, they may ratify and confirm the contract.

If goods are purchased by sample at an agreed price, and on delivery they are found to be of inferior quality to those bargained for, the purchaser may return the goods and rescind the contract; or, he may keep the goods, and, in an action for the price, may show such inferiority in reduction of damages, and have judgment against him for the real value of the goods only.

The secretary of State may make copies of records or papers in his office, and his certificate, under the State seal, will be evidence of the verity of such copy; but it is no part of his official duty to certify facts; and his certificate of the existence of any fact, even though under the State seal, will not be competent evidence, except of the single fact that the paper so certified is a true copy of the original on file.

A verdict rightly found on most points, but erroneous on one point only, need not be wholly set aside, but a new trial will be granted on that point where there was error before.

ASSUMPSIT, by John G. Butler & Co. against the town of Northumberland, for goods sold and delivered and money had and received.

Plaintiffs, who were merchants in New York, claimed to recover for liquors sold in August, 1867, and March, 1868.    It appeared that the plaintiff Butler, in August, 1867, at Northumberland, solicited orders·

from Henry P. Watson, who it was admitted was town liquor agent. Watson, as agent, verbally ordered various liquors, Butler saying that he would forward the goods by the Grand Trunk Railway, and would allow Watson the difference in freight between the freight from New York to Northumberland and the freight from Boston to Northumberland. The liquors were subsequently selected by plaintiffs from their stock in New York; were directed to "Town of Northumberland, N. H., Henry P. Watson, Agent," and were delivered to a transportation company in New York, to be carried by water to Portland, Maine, and thence *via* G. T. Railway to Northumberland. Watson paid the freight on the goods purchased in August, and plaintiffs subsequently credited him with the difference between the freight so paid and what the freight from Boston would have been. Watson refused to receive from the railroad the liquors ordered in March, and forwarded in the same manner.

1. Subject to exception, the statute of Massachusetts, offered by defendants, was excluded; and it was ruled that, upon the above facts, the sale was in New York.

By the original agreement between Watson and the selectmen he was to receive a compensation of five dollars per month; but it was subsequently agreed that he was to retain all the net profits of the sales "if he did not sell too much." Whether he "sold too much" was to be decided by the selectmen. At the expiration of Watson's term of office, about April, 1868, he did not pay over any money or account for any profits, nor was he asked to do so; but he turned over to the town the liquors then on hand, including part of those purchased of plaintiffs; and the town having advanced Watson money to pay another bill, gave him credit for the liquors thus turned over.

2. Subject to exception by defendants, it was ruled that the Court would not presume that a State liquor agent was appointed, nor take judicial notice of such appointment.

3. Defendants also offered in evidence two documents from the office of the secretary of State, which were offered to show that there was a State agent at the date of these purchases; which were excluded, defendants excepting. The first was a certificate by the secretary of State, of the existence, date, &c., of a contract between Governor Smyth and one Baker, by which Baker was to be State agent, and was to furnish liquors to the several town agents, and that said Baker had filed his bond, and that both the appointment and bond were on file in his office. The certificate closed in these words: "In testimony whereof I have hereunto set my hand and affixed the seal of said State the date first above written."

Signed and sealed with the State seal.

The other paper purported to be a copy of the contract between Governor Smyth and said Baker, by which said Baker was appointed liquor agent for this State, and also a copy of the bond of said Baker. These were certified as being true copies of the contract with and the bond of John J. Baker as liquor agent for the State of New Hampshire, "according to the originals now on file in this office. In testi-

mony whereof I have hereunto affixed the seal of State the date above written."

Signed and sealed. The contract purported to be signed by Gov. Smyth and John J. Baker, and was witnessed by two witnesses.

Defendants contended that a purchase by them from any other person than the State agent was illegal; and that they were induced to make these purchases by the false representation of Butler that he was State agent. It appeared that neither Watson nor the town ever offered to restore to plaintiffs any portion of the liquors. Watson testified that, within a short time after the liquors were received, he discovered that some of them were very inferior in quality to those bargained for.

March 30th, 1868, Watson wrote plaintiffs a letter asking a little further time for payment, saying that the selectmen had not got quite money enough, but that the selectmen told him (Watson) that they would settle in a few days. Plaintiff Butler testified that in the summer of 1868 he presented the entire bill to two of the selectmen of Northumberland, who gave him to understand " that they should have to pay for it."

4. The jury were instructed, in substance, that plaintiffs, though not State agents, were entitled to recover, unless it appeared not only that defendants were induced to make the purchase by Butler's misrepresentation (about which the evidence was conflicting), but also that, within a reasonable time after discovering the fraud, they did all they reasonably could to return to plaintiffs the balance of the liquors which they then had on hand; and that plaintiffs could recover the contract price unless defendants offered to return the liquors within a reasonable time after discovering their inferiority. To these instructions defendants excepted.

Verdict for plaintiffs for full amount claimed. (The jury were requested to find specially the actual value of the liquors, but failed to agree on that point.) Motion to set aside verdict.

The case was reserved.

*H. & G. A. Bingham*, for plaintiffs.

*Hibbard, Farr & Son*, for defendants.

SARGENT, J. The statute of Massachusetts was properly rejected. There can be no real pretence that this contract was made in that State. It was made either in New Hampshire or New York, and the agreement was to discount from the price in New York whatever the freight on the liquors from that place to Northumberland should exceed the freight from Boston to the same place. The liquors were delivered in New York, and Watson, the defendant's agent, paid the freight from that place to Northumberland; and the plaintiffs charged defendant with the price of the liquors as agreed in New York, and credited the discount as agreed on.

We think the ruling that, upon the evidence stated, the sale of the

liquors was in New York, was correct, upon the authorities. *Woolsey* v. *Bailey*, 27 N. H. 127 ; *Smith* v. *Smith id*, 244 ; *Banchor* v. *Warren*, 33 N. H. 183 ; *Smith* v. *Godfrey*, 28 N. H. 379 ; *Binninger & Co.* v. *Smith*, Grafton Co., Dec. Term, 1867.

By the act of 1855, ch. 1658, secs. 7 and 8, each town was to appoint one or more agents, not exceeding three, for the purchase of spirituous and intoxicating liquors, and for the sale thereof within such city, town, or place, to be used for particular purposes therein specified ; and in the purchase and sale of such liquors he was to conform to such rules and regulations as the mayor and aldermen or selectmen shall prescribe, &c., with many stipulations as to the arrangements between the town and such agent.

The town was thus authorized, through their agent thus appointed, to purchase liquors and to sell the same, and though the agent was to be restricted in the sales he made, yet neither he nor the town were restricted in their purchases ; but the town, through their agent, might buy any kinds of liquors, in any quantity, at any time or place, and of any person or persons whomsoever, who would run the risk to sell to such agent for and on behalf of the town. Section 23 of this act expressly provides for these agents obtaining liquors for a limited time. But under this law the town might, like an individual, purchase of any one who chose to sell to them or their agents.

In 1858, the act, ch. 2080, provided that the governor shall contract with some person or persons to furnish these town agents with pure liquor ; and after doing so he was to notify these agents of such contract, and it was thereafter their duty to purchase all such liquors of such person or persons so contracted with.

Sec. 4 provided that if any town agent shall adulterate any spirituous or intoxicating liquors which he may keep for sale under such act, or shall purchase any spirituous or intoxicating liquors of any other person than such as the governor shall have contracted with in the manner aforesaid, he shall for each and every such offence forfeit and pay for the use of the city or town for which he is such agent, the sum of fifty dollars, to be recovered, &c.

This is not a provision that the agent shall not purchase of any other person for the town, or that any person not thus appointed or contracted with shall not sell to a town agent, or that any such sales or attempted sales shall be void or illegal ; but it is simply made the duty of the town agent to purchase of the person thus contracted with, because the presumption would be that he would thus get pure and unadulterated liquors, but if he purchase of other persons, as of course he may do under his general authority to purchase for the town, he is made liable to the town for the penalty. The town is not made liable to forfeit the liquors thus purchased, nor is it required to destroy them. The sale is not made illegal on the part of the town or the party selling the liquors, but the agent is held to have been remiss in the performance of his duty to the town, and he is made liable for the penalty. And the General Statutes are substantially the same as the statutes of 1855 and of 1858.

A man from New York, who should come to any of our towns to ascertain the authority of the town agents, and should examine the town books in which the appointment of the town agent is recorded, he would find the agent authorized to purchase liquors generally for the town, and to sell them for particular purposes, under such limitations as the law and the regulations imposed by the selectmen prescribe. But all these limitations and restrictions do not concern him so long as the power to purchase is general. If the man knows nothing of the requirement which the law makes of the agent to buy of a particular person only, but takes the authority of the agent to be as set forth in his appointment, and thereupon sells him liquors in New York where he has a legal right to sell them, there is nothing to prevent his recovery.

In this case there is no evidence that the town agent had any notice whatever that the governor had contracted with any person to furnish the town agents with liquors,—no notice or knowledge that there was any State agent. But the defendant's counsel contend that the Court are bound to take judicial notice of such appointment, or at least to assume that such appointment has been made. But we think this cannot be so. A contract was to be made by the governor with some person or persons, without limit as to number or place of residence. This contract was not required to be recorded anywhere, and no one was to be notified of its existence except the town and city agents, who were to receive notice from the governor in such way as he should think proper to notify them. This notice might be given by private letter, or in any other way. How the Court could take judicial notice of a contract which was not to be recorded, published by proclamation, or even printed in the public newspapers, or made known to any one but the town and city agents, would require some ingenuity to determine. There would be much more reason for requiring the Court to take judicial notice of the appointment of sheriffs and all other public officers which the governor and council are required to appoint; but this has never been held to be the law.

It does not appear, therefore, that the agent has violated any law, or made himself liable to any penalty by this purchase, because it does not appear that he was ever notified of the appointment of any State agent. So far as appears, then, the agent may have done his duty to himself, to the town, and to the public.

But was there any competent evidence of the appointment of a liquor agent for the State? General Statutes, ch. 13, sec. 2, provides the form and device of the State seal, and sec. 10 provides that the secretary shall have the custody of the State seal, and that "copies of records and papers in his office, certified by him or his deputy, and authenticated by the State seal, shall be evidence in like manner as the originals."

Now the certificate of the secretary of State offered in this case does not purport to be a copy of any record or paper in that office, but it is simply a statement of facts concerning a paper which he says is on file in that office; but the fact that he has the custody of the State

seal does not make his certificate or statement of a fact any better evidence, unless taken and sworn to in proper form, than that of any other witness. The State seal will be evidence of the verity of the copy to which it may be attached, but is no evidence of the verity of any statement of fact which the secretary may make, except the simple fact that the paper to which it is attached is a true copy of a paper or record on file in that office. *Oakes* v. *Hill,* 14 Pick. 442, 448; *Robbins* v. *Townsend,* 20 Pick. 351.

The other paper purported to be a copy of a contract between Governor Smyth and J. J. Baker as State agent for the sale of liquors, and this is properly certified as being a copy of an original paper on file, and has the State seal attached. This makes the copy " evidence in like manner as the original." But suppose the original paper, or a paper purporting to be the original contract, had been produced in this case, what would have been necessary ? Simply to have proved the execution of the paper by the subscribing witnesses; and if the copy is to stand upon the same ground as the original, and may be used in evidence in like manner as the original, then in either case there must be proof of the execution of the original, unless the original is something that proves itself, or something of which the Court is bound to take judicial notice. This contract cannot stand upon either of these grounds. There was no attempt to prove the execution of the original in this case, and the copy was properly rejected.

But in this case, suppose that a State agent had been appointed and this were properly proved, and suppose the defendant's agent had been duly notified of that fact by the governor, so that he would have been liable for the penalty of $50 for his unfaithfulness to the town in the discharge of his duty, still there would be no foundation for the argument that the parties were *in pari delicto,* and that therefore the plaintiffs could not recover, because in this case there is no penalty against the man who sells to the town agent, provided he can legally sell at all ; for the act of thus selling is not declared to be void or illegal, nor is it prohibited or forbidden. The agent alone is made liable for a breach of duty on his part, but no one else is made liable to any penalty.

In *White* v. *Franklin Bank,* 22 Pick. 181, the bank was prohibited by statute from making certain contracts, and the statute subjected the bank to the penalty of forfeiture of its charter for disobedience to that act. The bank had made a contract with White which was thus prohibited, and White sought to recover from the bank the money he had deposited with it, under and by virtue of that contract. The Court, WILDE, J., held that plaintiff might recover ; that the parties were not *in pari delicto.* He says: " The prohibition is particularly levelled against the bank, and not against any person dealing with the bank. In the words of Lord Mansfield, ' the statute by the distinction it makes has marked the criminal.' The plaintiff is subject to no penalty, but the defendants are liable for the violation of the statute to a forfeiture of their charter. To decide that this action cannot be maintained would be to secure to the defendants the fruits of an illegal

transaction, and would operate as a temptation to all banks to violate the statute by taking advantage of the unwary and of those who may have no actual knowledge of the existence of the prohibition of the statute, and who may deal with a bank without any suspicion of the illegality of the transaction on the part of the bank."

So in this case, though the act itself is not prohibited as in case of the bank, yet the only penalty prescribed for anybody is for the agent. The agent by such purchase made himself liable to the penalty, but the person who sold to him did not, if he had the right to sell generally. It is simply reversing the general rule. Generally the man who sells liquor contrary to law is punished, while the one who buys it is not subject to any penalty for such purchase, and it seems that though he knew when he bought it that the party selling is violating the law by such sale, that makes no difference. *Commonwealth* v. *Willard*, 22 Pick. 476.

The line of distinction which applies in this case between those who are *in pari delicto* and those who are not, has always been recognized, and is settled by a long course of judicial decisions. *Williams* v. *Hedley*, 8 East. 378; *Jaques* v. *Golightly*, 2 Wm. Blacks. 1073; *Browning* v. *Morris*, Cowper 790; *Smith* v. *Bromley*, 2 Dougl. 696, note; *Parker* v. *Rochester*, 4 Johns. Ch. 329; Broom's Leg. Max.* 327, and cases cited; *Worcester* v. *Eaton*, 11 Mass. 368; *Com.* v. *Willard*, 22 Pick. 476. So that if everything had been proved that the defendant claimed, it would not have made the parties stand *in pari delicto*, or prevented the plaintiff here from recovering.

No question was raised upon Watson's letter of March 30, or the statement of the selectmen to plaintiff. It does not appear that any objection was made to the testimony, or that the Court made or was asked to make any ruling in relation to it, or if they did that any exception was taken to the ruling.

The first instructions to the jury we think were correct, that even though Butler's false representations may have induced the defendants' agent to purchase these liquors, yet that unless the defendants, within a reasonable time from the discovery of the fraud, did all they could to return to plaintiffs all of the liquors which they then had on hand, plaintiffs (so far as this point was concerned) could recover. These instructions assume that the purchase was effected through those false representations of Butler, which certainly was the most favorable view for the defendant, for the case finds that the evidence on that point was conflicting, and it does not appear which way the jury found that fact, if they passed upon it at all. Under the instructions they did not need to find it, as it was assumed.

But when one party is induced to enter into a contract by the fraud of the other, when the fraud is discovered the innocent party may ratify the contract or he may rescind it, but if he elect to rescind he must first restore what he has received under it, or at least do all in his power towards making such restoration. *Cook* v. *Gilman*, 34 N. H. 556, and cases; *Evans* v. *Gale*, 17 N. H. 537; *Weeks* v. *Roby*, 42 N. H. 316, and cases; *Willoughby* v. *Moulton*, 47 N. H. 205.

If the fraudulent misrepresentation had been in relation to the quality or value of the liquors, then a similar question would have been raised to the one raised by the second instructions given, namely, whether those misrepresentations might be offered in evidence in reduction of damages, in an action brought to recover the contract price of the article sold.

The second instruction seems more doubtful. The only fraud alleged was the misrepresentation in relation to the agency. If after that fraud was discovered the contract was ratified, it would stand just as though the same contract had been made without any fraud ; the fraud is excused or overlooked, and the contract remains just as though it had not existed. The contract stands, then, after it is ratified, just as it would at first if Butler had exhibited to defendant's agent certain samples of liquors, and given him the prices of each, and the agent had afterwards ordered certain liquors like the samples which had been sent to him, but which proved to be inferior in quality to the sample ; and the question is, whether, in an action to recover the contract price, the defendant could show such inferiority in mitigation or reduction of damages, or whether the plaintiff must recover the contract price in his action, and the defendant be put to his cross action to recover back the difference between the contract price and the real value of the liquors at the time of delivery.

Where there was no fraud in the contract, or, if there was, the contract has been ratified after the fraud is discovered so as to, stand as if purged of the fraud, must the party receiving goods inferior to those he has contracted for return, or offer to return, the goods, or else pay the contract price, and bring his suit to recover damages on the contract; or, may he keep the goods, and, when sued for the contract price, show in mitigation of damages such inferiority, and, instead of being held to pay the contract price, only have judgment against him for the real value of the goods when delivered ?

Chitty, in his work on Contracts (6 Am. ed.) 743, after speaking of the old rule that when the party defendant had received any benefit from a contract the agreement must stand, and the defendant must perform his part thereof, and must seek in a cross action a compensation in damages for the plaintiff's default, says, " of late, however, the courts, to prevent unnecessary litigation, have in many instances allowed a defendant, in case of *partial failure* of consideration (except when an action is upon a bill of exchange and a question of unliquidated damages would be raised by inquiring into the consideration for such bill), instead of bringing a cross action, to reduce the damages by setting up such partial failure of consideration." And he adds, " This relaxation of the rule generally applies in the case of a contract for goods, or work and labor and materials, in which the defendant, when sued for the price, may show the insufficiency of the goods, or incomplete performance of the work, &c., although a specific sum was agreed upon."

It is said in 2 Saunders on Pl. and Ev. 543, that " in an action for goods sold, where plaintiff relies on a *quantum meruit* and no price

has been agreed on, the defendant may give evidence of the badness of the article in reduction of damages to the extent of the real value; and when the goods have been sold *by sample* or otherwise at a specified price, and the question was whether the defendant was compelled to pay the full price, or might prove in diminution of damages that the goods did not correspond with the sample but were of inferior quality, it was held that he might, and that the plaintiff could only recover their actual value."

But he also notices the distinction where a note or bill of exchange has been given for the price, and says that in such case the defendant must rely on his cross action.

In 2 Greenl. Ev., sec. 136, the author, after speaking of the embarrassing conflict of decisions on this subject, concludes that the English rule is, that in case of an express contract for a stipulated price, and the failure of consideration *is partial only*, the defendant having received some benefit from the consideration, whether goods or services, and the *count is special* on the express contract, the defendant cannot prove partial failure in bar *pro tanto*, but must resort to his remedy by action, unless the *quantum* to be deducted is matter susceptible of definite computation.   But that when the plaintiff proceeds upon general counts, the value of the goods or services may be appreciated by evidence for the defendant.   But he adds: " The American courts, to avoid circuity of action, have of late permitted a partial failure of consideration to be shown in defence *pro tanto* in all suits on contracts respecting personal property or services."

This subject is considered in the Am. note to *Cutter* v. *Powell*, 2 Smith's Lead. Cases 27, 28, 29, where the doctrine is stated that in all cases where the counts are general, either the *quantum meruit* or the *indebitatus* assumpsit, the plaintiff can recover no more than his goods are shown to be actually worth, even though he may show that there was some contract for a specified price.

We have numerous authorities in this State in relation to defences where the suit is upon a note or bill given for the price of goods sold, but it will be seen that those cases are placed upon a different ground by the elementary authorities from the case we are considering.

In New York they have gone much further in admitting the partial failure of consideration as a defence *pro tanto*, even in case of notes given for the purchase money, than in most other States.   But it is upon the peculiar ground of *recoupment* which seems to have found more favor in that State than elsewhere.

In Massachusetts it is held that in case of a promissory note given for the price of personal property, want or failure of consideration might be given in evidence *pro tanto*—*Parish* v. *Stone*, 14 Pick. 198 ; and that in a similar case, on a note for a horse, fraud in the sale might be given in evidence in reduction of damages without rescinding the contract.     *Huntington* v. *Stratton*, 22 Pick. 510 ; *Perley* v. *Balch*, 23 Pick. 283 ; *Howard* v. *Ames*, 3 Met. 309.

In this State it was held that in a suit upon a note given for the purchase money, in case of chattels or real estate alike, if there was a

partial failure of consideration which could be ascertained by mere computation, the deduction might be made, but if it was a matter of unliquidated damages, it could not be considered, but the defendant must resort to his action for remedy. *Drew* v. *Towle*, 27 N. H. 412; *Riddle* v. *Gage*, 37 N. H. 519.

But by our statute of 1861, a partial want or failure of consideration, when the matter consists of unliquidated damages, may be deducted in all cases where a total want or failure of consideration would be a good defence to the whole claim.

Upon all these authorities we think it clear that in this case the fact that some of the liquors received were of inferior quality might have been shown on this trial in reduction of damages; and in addition to the above authorities, there are several cases in this State bearing pretty directly in favor of this view; such as *Wadleigh* v. *Sutton*, 6 N. H. 16; *Earle* v. *Page*, *id.* 477; *Haseltine* v. *Guild*, 11 N. H. 390. Especially under our statute of 1861, can a partial want or failure of consideration be shown as a defence *pro tanto*, since in a case of this kind a total want or failure of consideration would be a perfect bar to the whole claim.

But there is no occasion to set aside this verdict altogether. It all stands well except this last point, and upon the authority of *Lisbon* v. *Lyman*, 49 N. H. 553, we will only allow a new trial on those points where there was a mistrial before. See *Winn* v. *Columbian Ins. Co.*, 12 Pick. 279; *Robbins* v. *Townsend*, 20 Pick. 351; *Dyer* v. *Rich*, 1 Met. 192; *Amherst Bank* v. *Root*, 2 Met. 542; *Sprague* v. *Bailey*, 19 Pick. 442; *Janvrin* v. *Fogg*, 49 N. H. 340. If the defendant so elects, he may have a new trial upon the issue as to whether any of the liquors furnished to defendant by plaintiff were inferior in quality to those bargained for, and if so, to find the actual value of the liquors so delivered. Otherwise,

*Judgment on the verdict.*